Judge Smith and I would like to acknowledge the presence of our visiting colleague from the Eighth Circuit, Judge Michael Maloy. We want to thank him for his continuing service to the United States and his service to this Court. On the calendar for today, we have two matters that have been submitted on the briefs. Hunter v. Sorheim was submitted on the briefs, and also one part of a combined case of United States v. Sterling Center Corp., the part involving Mr. Elder, has been ordered submitted on the briefs. With that, we have four matters that are on the oral argument calendar, which we will take in the order in which they appear. We'll begin with Mills v. Mitchell. Counsel, you may begin. Good morning, Your Honors. May it please the Court. My name is Daisy Zhu, and I represent Appellant Jeffrey Mills. At this time, with the Court's permission, I'd like to reserve three minutes for rebuttal. This is a case about prisoner access to the courts in a prison's completely dysfunctional and indifferent administrative grievance process. Mr. Mills did everything he could to exhaust administrative remedies and followed prison procedures every step of the way, but through prolonged delays and use of procedural dead ends, the prison thwarted his ability to exhaust administrative remedies. The prison's inaction even led Mr. Mills to beg nearly a year after he submitted his grievance. Now, please, can you process my complaint without any further delays? The District Court's decision dismissing Mr. Mills' complaint for failure to exhaust administrative remedies should be reversed. For one, as the State concedes, Mr. Mills did, in fact, exhaust one of his grievances. But the focus of my argument today is going to be on two other grievances for which administrative remedies were unavailable. You have to show any kind of prejudice to Mr. Mills in order to get relief in this case? No, Your Honor. I mean, what if it is a no harm, no foul rule? No, Your Honor. The Supreme Court, when it decided in Ross v. Blake that a prisoner need not exhaust administrative remedies that are unavailable, it required no showing of prejudice. The first grievance I'd like to discuss is grievance number SQ1501751. When Mr. Mills initially submitted this grievance, the prison took two months beyond the time limit to respond, and only after Mr. Mills sent them multiple letters asking them to please process his overdue grievance. But the bureaucratic dysfunction did not end there. When Mr. Mills finally received a belated decision, he appealed to the third and final level of review, and that's when he found himself in procedural chutes and ladders. So is this the grievance where he's grieving that the officer removed him from his job, that they withheld the pay, that they moved him to a new cell, that the supervisors did not stop the harassment, and that he had 30 working days to issue that the supervisors did not stop the harassment? Is that the one? That's correct, Your Honor. So what job removal was your client grieving then? At that time, he was grieving that he had been removed from his job in May 2015. It seems a little interesting because it was hard to really see, based on his grievance, that that's what he was grieving because he was removed from his job in 2014, right? That's correct, Your Honor. And that he filed as a separate grievance, and that was 143059? That's correct, Your Honor. And so when he files this new grievance, it doesn't seem to, in my view, suggest, and the district court surely couldn't decide whether he was grieving the same 2014 removal or he was grieving that he didn't get his job back because he wasn't removed from his job. He just didn't get the old job back, right? From what I understand, and the district court drew all reasonable inferences in favor of Mr. Mills and decided he was, in fact, grieving of a job loss removal in May 2015. So it was that he didn't get his job back. From what I understand, he had his job reinstated, but he was not allowed to perform the duties that he believed he was entitled to perform. Well, as I understood it, in 2014, he was removed from this job because he was found in possession of a cell phone. That's what the state alleges. Well, that's what I— That's what the state found. Well, I thought that's what they found. So I guess my worry is that when I was reading this, I was trying to figure out what we're really talking about. Right. And is all we're talking about in this grievance that he didn't get his old job back then in 2015? Yeah, that's correct, Your Honor. In 2015, he was not allowed to perform the duties he believed he was entitled to. So if this were exhausted, then these would be the only claims he could bring, correct? No, Your Honor. We believe that Mr. Mills has exhausted additional claims of retaliation that— Well, but just a minute. Those are not the ones that are in that grievance. The only ones that we have in that grievance I read to you, and that's why I'm trying to make sure what it is he can grieve. Exactly. We agree that he exhausted the grievances you just listed. We also argue that Mr. Mills exhausted additional acts of retaliation. Those in what grievance? In his complaint, he specified additional— Now, just a minute. This is the complaint to the district court. I'm trying to figure out where it is that he grieved the additional things you want to then put in the district court complaint. Mr. Mills did not grieve those additional—well, he at least did not exhaust those additional acts of retaliation through the— He did not exhaust those, and there's no evidence here that it was something he couldn't have exhausted. How can he put those in the complaint? A prisoner need not exhaust every incident of conduct that's part of a continuing violation. And here, Mr. Mills alleged in his complaint additional acts of retaliation that occurred after he had filed his grievance. If that's so, if that's really so, why didn't you suggest that because there was a grievance in Grievance SQ 15028839 that has been stipulated that they exhausted, that he could put all these other things back in because of that? Well, our position is that he only exhausted any acts of retaliation that occurred after he had filed his grievance because at that point, the prison was already on notice that Mr. Mills was suffering continuous retaliation, so they were able to—they were in a position to facilitate a resolution and to prevent additional reprisals. He did allege retaliation in the 2514 complaint, right? That's correct. Which was filed within a month of the 1751. Exactly. But if we have to go to 2514, were there any problems that happened with that grievance? Yes. Which one? Where? So when Mr. Mills submitted that grievance to the third and final level of review in November 2015, the prison did not take any action on that grievance until it screened it out inexplicably on March 24, 2015. So my question is, what is the effect of the screen outs? Because there's no question what you're saying there is true. He files it, it's accepted by the third level in April of 2016, and then they deny the grievance thereafter. What is the effect of the screen outs? At the point the court screened out the grievance, it had not acted on the complaint within the time limit specified in regulations. The prison has 60 working days to respond to a grievance at that level of appeal, and it did not act until nearly five months later. So because the prison did not follow its own procedures, administrative remedies were unavailable. This is the screen out. What I'm suggesting is the fact that there is a screen out, does that give extra time for the prison to respond? No, Your Honor. The prison has a specific set amount of time. I know they have a specific set amount of time in the regulations. I understand that, but then these screen outs come along, and it doesn't seem to me that you explain or anybody else explain what the effect of those screen outs are. What is the screen out? Does that just mean that they're not going to handle the appeal because there's some kind of procedural defect in it? He hasn't signed it. He hasn't dated it. He hasn't done something. Is that what a screen out means? That's my understanding. The grievance was rejected for some reason. For some procedural reason. For some procedural reason. And it can be corrected. Yes. But the prison here did not specify why the grievance was belatedly screened out. This court considered this procedure in two other cases, Saffie, Kimbrell, which held that when the prison improperly screens out a grievance, then administrative remedies are unavailable. But you didn't address the issue. The issue is really not what is the effect thereof as it relates to whether it was right or wrong, but whether they get additional time then to respond, which I couldn't find in any of those cases. My understanding of the screen out is that it is the prison's response, the initial response to the grievance, and it was required to screen out the grievance within duplicable time limits. Well, what did they tell him when they screened out? I mean, the follow-up to Judge Bybee's question, I don't exactly understand what a screen out is. Did they send him a form that says we screened out your appeal, or what do they do? Well, according to regulations, the prison is supposed to provide an explanation to the prisoner when it screens out an appeal and explain to him what was procedurally defective, what he needs to do to resubmit his grievance. And this record does not show that the prison provided any explanation to Mr. Mills as to why his grievance was screened out. And on the 2514, it took more than 120 days for them to tell him that it was procedurally defective. Isn't that right? November 6th to about March 24th, 2000? I'm sorry, yeah, November 6th, 2015 to March 24th, 2016? Yes. I didn't calculate the number of days, but it's more than 120. I haven't calculated either, Your Honor. I know it's at least 60 working days, so five months approximately. Oh, I was counting absolute days. I wasn't counting working days. Are you arguing that the screen-out in and of itself was a decision that exhausted that grievance? Yes, Your Honor, in addition to the fact that the screen-out did not occur until after the time limit had expired. When did the screen-out occur? The screen-out occurred on March 24th, 2016. And then they accepted it at the third level on April 11th, right? That's correct. Did he change it in any way between the screen-out and the acceptance? Based on this record, we don't know if any changes were made. We just know that. Okay, so on April 11th, he knows that they have accepted the appeal. He files his suit eight days later, and the prison denies on the merits his third-level appeal on June 22nd. Is that within the 60-day time period? After he resubmitted, the June 22nd decision was timely. It was timely. Yes. So why does he—if he knows that the third level has accepted the appeal, why does he get to file suit without having to wait for a response? That's because of everything that happened before, the screen-out and the delay at that point. But he filed the appeal. I mean, he corrected the error, and he knew that they had accepted it. So why at that point does he get to file the claim? In numerous cases, circuit courts have held that even when a prisoner is excused from exhausting administrative remedies and continues to use the grievance process, that does not negate the fact that administrative remedies were previously unavailable. So once the prison was delayed in responding to this grievance and improperly screened out his appeal, Mr. Mills was free to proceed to federal court. What case says that having got the acceptance of the third level and therefore knowing that this has been accepted as per what he wanted to do, that he can then thereafter file the suit in April and not be subject to the fact that he didn't exhaust his remedies? What case is your best case for that? So the Andres v. Marshall case from this court. That's the best one, if you've got one. Andres v. Marshall? That's correct, Your Honor. In that case, the prisoner continued to use the administrative grievance process after filing his lawsuit, and the court still held that administrative remedies were unavailable. And the government challenged it on that basis? That's correct. That's my understanding of the government's position. Just remind me on the time limits. On the 30-day limit between the first and second and the second and third, is that 30 working days? That's correct. But the 60 days is 60 calendar days. No, it's 30 working days for the first and second level, and then from the third level it's 60 working days. I believe you may be referring to the modification orders. Those are calendar days. Those are calendar days. That's correct. And the duty to advise when the modification order cannot be completed is also 30 calendar days. I believe there is a time limit related to providing the prisoner an update regarding the progress of the modification orders. Your Honors, I see that my time has expired. Okay. I will allow you some time for rebuttal. Thank you very much. Good morning. If it pleases the Court, I am Deputy Attorney General William Baranich representing the defendants. I am not reserving any time, but I do have a request, and that is that I be allotted 60 seconds at the outside to briefly summarize the system that's in place in the California prisons. Everything I say after that will have that as an underpinning, and I think it will be helpful to the Court. The California process has three aspects to it. First and foremost, it is a system. It is a system that provides an opportunity for inmates to present grievances, and it provides an opportunity for the prison to consider and address those grievances. Secondarily, no system can function effectively without structure. So in this case, we have procedural guidelines that provide that structure for the running of the system. The third aspect is the flexibility that is built into those guidelines, which prevents the structure from being the primary concern and returning the focus to the system and making sure the grievances are addressed. There's also an aspect of it that encourages communication between the inmate and the system so that he's kept apprised of what's going on. That ends my summary. In every case in which this Court has determined, and I believe it's only been the Andres case, that a substantial delay was a factor, there was no communication. There was an inmate who submitted an appeal. It was ignored. They refused to process it, and they also refused to respond to his requests for information. He had to go to the state court in a habeas proceeding and obtain an order to force the prison to handle it. That is not the case here. We have three grievances that are at issue in this appeal. The defendants have stipulated that one of them was properly exhausted and that the court erred in dismissing it. As to the other two, the flexibility built into the California system, which is apparently not the case in Pennsylvania in the Shiflett case in the 3rd District, excuses minor delays. Now, you've heard that Where do the regulations provide for minor delays? Okay. In 3086.8, subsections D and E, it provides that these are the deadlines established in subsection C, but there are exceptions, and those are if the inmate is unavailable, if staff is unavailable, or if witnesses are unavailable. It also provides that if there's a complex issue, that those deadlines, if you will, can be ignored because it's necessary. There's also a provision for exceptional circumstances such as a riot or a lockdown. And 3084.8E says if there's going to be any kind of a delay or an exceptional delay, then you must provide an explanation of the reasons for the delay. And I think one Within the time limits provided. One, what constitutes an exceptional delay is not defined. Secondarily, I think in this instance, what that provision requires is an open channel of communication with the inmate as to the status of his appeal, and I believe at least in 1751, the record reflects that that was ongoing. In 1751, he filed his complaint. The deadline to respond to it was August the 3rd. The prison has 30 working days, which on average calculates out to about 45 calendar days. Now, they did not get it by August the 3rd, but they did bring him in for an interview on August the 12th. That's approximately a week later. At that point, he's aware that his grievance is being processed because he's being interviewed about it. The record also reflects that two days later, they completed that review. Within a week, he had been sent back to the appeals coordinator. Mr. Mills started questioning the status. He was using the Form 22 provided by 3086, and they responded. He said, what's the status? And they said, well, it's been denied, but there were some questions about it, and there's going to be some revisions. So on 1751, there are two time periods that concern me. One is the January 19, 2016, to April 2016 response from the third level. Can you tell me how many working days that was? I've got approximately 90 calendar days. That's what it would be. The regulations provide for 60. And that would be approximately 60 working days? It would be 60 working days or 90 calendar days. All right. Then the May 15, 2016, to September 2, 2016, that's also an appeal to the third. So they have 60 working days to do this? Well, anything that happened after April 19 is irrelevant. There's case law out there that says that you decide whether or not these remedies are available at the time he follows suit. They could have responded the next day. They could have responded five years later. It would not have made a difference. Well, I understand that they weren't obligated to do anything, but they did. I mean, the system continues to grind here just a little bit, but that delay was approximately 120 calendar days. Yes. Which would put it sometime well after the 60 working days they were entitled to. The situation with 1751, and the record is a little shallow on that, I admit, is that it was accepted at the third level and then returned to the second level on numerous occasions. And that extended the deadline considerably because the second level has 60 days. The dates that I'm showing are May 15 is when he appeals to the third level, and September 2, 2016 is when they issued the modification order. That's at the third level. Again, that's approximately 120 calendar days. Taking your 45 calendar days is equal to, if they had 60 working days, that would be approximately 90 days. So they were 30 calendar days over what the regulation provided them. That was just issued a modification order. And as I understand it, just to help, the May 15, 2016 appeal was due on August 9, 2016, and nothing happened until September 2. Again, the flexibility that is built into the system. I've cited to you specific regulations that talk about specific situations where that can be extended. There's also the provision, which is 3000.5 subsection F, which is more of a catch-all.  every factual scenario that might arise that causes delay. Well, the worry that I have, and I appreciate your argument, the worry I have, it seems to me, as Judge Bybee has pointed out in the regulations, it seems to me we have a set standard about when the reply has to be done. And then we also have in there, if it's not going to be done and you've got a reason to not do it, then let us know about this now. So we know why. And not let us know about it now, but let us know about it before the time runs. Now, it seems to me very difficult for us to say, on the one hand, that the prisoners have to abide by these regulations, but that the state does not. And that's why I'm interested in your answers, because I saw the same problems in those two periods of time with this particular grievance. There are two responses to that. One is that, and I've heard this discussed in other cases, that what's good for the goose is good for the gander. If the inmate has to meet this deadline, then the institution certainly has to. Oh, I've heard the institution make those arguments too many times to me to now say, well, I don't have to think about it when it's the institution. Well, the regulations provide the same flexibility for the inmate. Well, I understand that. But I didn't think that – I mean, I was surprised, this is the first time I've ever heard it, that simply because the plaintiff files a state court action, that now the regulations don't apply to the state. I have not made that argument, Your Honor. Well, I thought that's what you just said, that because he filed his state court action on April 19th, that the big delay from May 15th to September 2nd was – I see what you're saying. I understand the confusion now. He filed his lawsuit on April 19th. That was the day it was accepted for filing. It was subsequently removed to federal court. But he did not wait until he had a third-level response to do that. He jumped the gun. He was impatient. It was obvious that the procedure was ongoing. He wasn't being ignored. He had the opportunity to submit forms, to ask questions, to see what the status was. He's not a mere bystander to his own grievance. He's a participant, and it's not improper to expect him to participate. He should take ownership of the claim to a certain extent as well. There is one item in the record, I believe it's at page 49, where they first advised him that it was being sent back to the second level for a reconsideration order. And in there, again embracing the flexibility there is, they said, it's being sent back to the second level. If you feel that it's been an unreasonable amount of time, then approach the appeals coordinator and remind him. And then once you get that, come back to us. And as he indicated in his 602 in a subsequent submittal, he tells the third level, hey, that's not my job. If you've got a problem with the appeals coordinator, you take care of it. He's abandoning responsibility for his own grievance under those circumstances. And the 2514 grievance, what do we do with this extensive delay between November and March? The record is admittedly thin in that regard, and there's no explanation as to the reasons where it says Form 22 responds. And it's just screened out. I mean, look. There is a procedure. Our clerk's office deals all the time with defective notices of appeal or motions or things like that. These can be dealt with very, very quickly. And if you're going to screen it out as opposed to decide it on the merits, it doesn't take you longer than the time it should take you to decide the thing on the merits. And again, and I'm limited by the record here, but my belief is that he submitted it, it was screened out, he fixed whatever was wrong, submitted it again, it was screened out. There are three entries under screen out. We don't know what it means when it says Form 22 responds. But we do know what it means when it says screen out. That means it was screened out, and there's a provision in the code for that process. He apparently corrected it because it went back in front of them and they eventually accepted it and then ruled upon it. The thing with that issue is that that one was actually decided, and he knew it was accepted before he filed suit. So he knew at the time he filed that he hadn't exhausted. Now, I'd like to also address the idea that – but what do you do with Andrews v. Marshall, which suggests that simply because he knew, that doesn't suggest that he, therefore, has the right. I mean, her argument is that Andrews says just because you know it, just because it doesn't, that now you've got something that you didn't know you'd had when you got the complaint does not end my ability to file that complaint because I didn't get the exhaustion. Now, I didn't read Andrews to say that, but that's her argument. And I understand that, and I think the difference is that in Andrews, the prison came back with an argument that said, well, okay, we delayed a little bit, but we were handling it now, and the court came back and said, it doesn't matter if you were handling it now. At the time he filed his lawsuit, it was unavailable. Well, that's what happened here. No, in this instance he filed on April 19th, and prior to that it had been accepted at the third level. So he had to file before April 11th, and then it would have been okay, but the fact that he waited until April 11th under Andrews, it's not okay? I don't think that's the case. I think the record fairly reflects that there were screen outs and that they were addressed. Well, what if he had filed on March 23rd, which is the day before the third level screens it out? I think the record would still reflect that it was screened out, and when there is a screen out, the inmate is informed. What day was it screened out? What day did he learn it was screened out? Again, the record is thin on that. Yeah, well, I mean, the best information we have is that he hadn't been told anything since November 6th. How long does he have to wait to find out whether it's been accepted or screened out? I think that when there is a screen out, he's informed of what the deficiency is and he's given an opportunity to correct it. Well, that may be the usual practice. Whether that was the practice here or not, the record doesn't tell us anything other than what we've got. But I don't think you can automatically assume that something improper happened. I mean, if there's a document that says it was screened out and that it was eventually accepted, you can assume that it was screened out, it was returned to him, he fixed it, and then it was accepted. You can't necessarily assume that there was something nefarious going on. I'm sorry. Let me go one further. Can we suggest simply because 1502839 was exhausted and therefore there are going to be complaints which can be made, that at that particular time the district court can look at other types of grievances if we just let that case go forward other than those specifically grieved in that complaint, in that grievance? I can address that, but I'm not sure I can do it in the 19 seconds I have left. Well, I'll beg your forgiveness, Chief, and you can address it. There are two aspects to that. One, the idea of harassment, and it's been variously classified as retaliation or harassment, but I think the grievances themselves classified as harassment. Harassment is a vague, unspecified term, and it cannot be understood in the absence of specific factual descriptions of the conduct that composes it. And in this case you've got, oh, one time I was made to move my cell. On another time I was denied access to my pay records. On a third time I did not get paid for the month of May. Now, in each one of those instances the prison has to conduct an investigation. When they go in on the cell move thing, and I don't really even think that in the grievance is alleged against Officer Arana. There's no connection to him. But they'd have to go in and see, well, was he even involved? What was the reason for the cell move? Was it legitimate? Is there even a claim here? That does not put them on notice of anything regarding a missed paycheck or a request for pay records. And the cases that the appellants are relied on, it's Johnson and Mazzotta, I believe, both involved repetitive conduct. In one case there were sexual assaults that were going on, and he needed protection. There was never a variance in that. In the other case the guy had been denied entry into the kosher meal program. So every time he went to the dining hall he was given a non-kosher meal. He didn't have to file a new appeal each time because they were on notice of what the situation was in both of those cases. But in here you have separate, disparate, discrete incidences. Each one of them takes its own investigation and its own response. You can't bootstrap on other claims, especially claims that have never been presented in an appeal and were never presented in the complaint. Thank you, Mr. Baranich. Thank you. Ms. Hsu. Let's put a minute on. We'll start with that. Thank you, Your Honors. I'd like to briefly address the topic counsel was just discussing, which is the scope of exhaustion. Here these additional acts of retaliation are not disparate events. They're all connected by the fact that Officer Ronnett was involved and was retaliating against Mr. Mills for exercising his right to use the grievance process. The prison was clearly on notice of this. The state cannot argue that the prison was not on notice that Mr. Mills was subject to future acts of retaliation. In fact, the prison in one grievance recognized that all of Mr. Mills' allegations, which were various acts such as being moved from his cell, being removed from his job, all spring from the single event of being prohibited from working in his job by Officer Ronnett. Further, Mr. Mills requested in his grievance that he be protected from future reprisals. The prison, in fact, granted this request. This is an excerpt of Record 79. So the prison was clearly equipped with enough information in order to take action on Mr. Mills' complaint, such as removing him from Officer Ronnett's supervision. And with my—I believe my time has expired. It has. Thank you, Your Honor. Thank you, Ms. Hsu. We thank both counsel for the argument. Mills v. Mitchell is submitted. The next case on the calendar is Scott v. Arnold. Thank you. Ms. Swanson. May it please the Court, my name is Michelle Swanson, for Respondent Appellant Warden Eric Arnold. With the Court's permission, I would like to reserve two minutes for rebuttal. This case is about whether the State Court reasonably interpreted the Supreme Court decision in McDonough Power Equipment v. Greenwood as requiring a petitioner seeking to overturn his conviction to show three things. One, a juror failed to honestly answer a material question on voir dire. Two, a correct response would have provided a valid basis for a challenge for cause. And three, the reasons for concealing the information affected the juror's impartiality. You're not contesting the first two, are you? No, we're not. Respondent contends that was a fair interpretation of McDonough and that the District Court's conclusion that McDonough precluded any inquiry into the juror's impartiality  Now, our — many of our cases have said that there's two elements. And the Court itself in McDonough uses a first and a second and then adds this next sentence. We're just not quite sure what to do with. If you have a valid basis for cause, doesn't that — isn't that what the third point that you cited us refers to? It does not. And this Court has actually held in two different cases, the first being Dyer v. Calderon, that McDonough, quote, held that an intentionally dishonest answer is not fatal so long as the falsehood does not bespeak a lack of impartiality. That goes to the valid basis for cause. No. Actually, what it goes to is the motivations for the juror's concealment, which is completely separate from that second showing. This Court also reiterated that this partiality showing was different from the cause showing in Pope v. Mandata, where it said its understanding, McDonough, was that a juror's reasons for answering dishonestly must, quote, call her impartiality into question. Again, the focus is on why did the juror conceal this information. Right. But it seems to me that California has decided that question when it makes a judgment that there is an implicit bias when you have a relationship with an attorney within one year and so on, whatever California requires. But California itself has made that judgment and made it as a matter of law. This is a valid basis for excluding a juror. And if this juror had acknowledged the relationship and had answered the question correctly, then he would have been excluded. Right? There really doesn't seem to be much doubt about that. We don't have to go and conduct the inquiry that the trial court, that the superior court conducted here to find out whether he's really a good guy or a bad guy. Well, I'd like to make the point that there's a difference between a prospective disqualification versus a retrospective view of what happened after a person that the State may choose to create classes of people that they feel, in general, could have bias and that — And therefore must be excluded. And that should be excluded from the juror. To foreclose any later challenge to the impartiality of the juror is one thing. But once that juror serves, the State is free to say, now the inquiry has changed. Now this person has served. Now we need to see, did this individual juror have bias? And the State was free to do that because just because they created a statutory — a statutory — statutory classification of disqualification did not elevate that to a constitutional violation. If I think that there are only two steps to McDonough, do you lose? I do not lose. And the reason for that is because the Supreme Court in McDonough specifically did not consider whether if the second showing was based on a statutory cause challenge where it was implied bias was the underlying bias, that that would necessarily satisfy its — a two-pronged showing. The valid basis for cause, doesn't that answer the question? It seems to me you have to — you have to have a third element here for the State to prevail. Again, there's a difference. McDonough made a point of distinguishing between the implied bias before it versus implied — versus actual bias. And they found a constitutional distinction between that. They rejected the implied bias before it as sufficient to make out the showing. Right. But if I think that there are only two — if I think that there are only two elements, California has made — it may have made a different judgment than the U.S. Supreme Court has made on the basis of the Due Process Clause. That's California's prerogative to do so. But won't that — doesn't that — I thought you — I thought you conceded to Judge Malloy that the State wasn't — wasn't going to contest elements one and two. Well, the State doesn't contest that Petitioner lost a valid basis for a challenge for cause. We're not saying that the underlying artificial implied bias underlying that cause challenge constitutes the constitutional violation under McDonough, because McDonough did not decide that, and it did not clearly establish that. I would like to — So what Supreme Court case are you telling me to look at that suggests that under McDonough's impartiality test, an implied bias is always a valid basis for a for- cause challenge? I'm not sure I understand Your Honor's question. Is the question that — do I have a Supreme Court case saying that an implied bias challenge is always a cause? Is always a valid — yes. There is none. Well, and if there is none, then is this not something California can decide? California can decide that, because they did — And if California decided it, then why should the District Court or we second-guess what California thinks about their own law? Because California decided that that was a valid basis for a challenge of cause at the time of Wadeer. After a trial, when that person has served, California has said, okay, we're no longer implying bias. We need to see if this juror was actually biased, because we want to preserve the finality of our judgments. But again, it seems to me that if I have no direct, on-point Supreme Court case that says McDonough's impartiality test says that implied bias is always a valid basis for the for-cause challenge, and I don't have that, then what California does with their own law on that basis is not something the District Court or I ought to get involved in. That's correct. And California can make their own decision. And if California law is wrong, that's the way it is. But my District Court nor I should get involved in that. That's correct. And therefore, this case is over, because all that happened here was California made that decision, and then my District Court judge tried to second-guess what they should have done, and I should say, you shouldn't have got involved. This is a California state decision. That was purely an interpretation of state law. Yeah. That's correct, Your Honor. So the judge should not have done what he done, and I better reverse. That's our position, Your Honor. Okay. I would also like to – oh, I see that my time is up. Reserve the rest for everybody. Thank you. Thank you. Thank you, Ms. Swanson. Mr. Hirsch. Good morning, Your Honors. I think it would be useful to divide the people's arguments into two bins. The first is an argument that the state court could not have made because it and state courts don't apply AEDPA. And that argument is that McDonough is not a close enough fit to the facts of this case for it to be considered on habeas as something that should have been followed. So you're suggesting, then, that it doesn't apply to state cases? No, I'm restating their arguments, Your Honor. Okay. So their first argument is one that is pure AEDPA and the state court couldn't have opined on, right? And I think that argument falls apart when you ask yourself, well, what would have been a close enough fit? And their brief tells us. It says McDonough would be meaningful here if it involved a state-created, statutorily announced implied bias challenge that is rebuttable by a showing of lack of actual bias. That's what they say would have been a good fit and I would have had a good claim. Well, that's a very strange argument because up until this very case, no court, to my knowledge, had ever said that an implied bias challenge is rebuttable. So to look for that in a Supreme Court case is, of course, quite a conundrum. That rule was made up in this case by a state court that put it into an unpublished decision with the apparent intention of denying this client a new  But if, in fact, the Supreme Court has never had a chance to weigh in on that and, therefore, the state has the right to make up its law as it goes on that, no Supreme Court case having said it cannot, what right do we have involved in it? That was my question to her because I wanted to make sure I understood the issue and now I ask it to you. Yes, Your Honor. So the state has never said before this case in an unpublished decision that an implied bias challenge is rebuttable by a showing of lack of actual bias, which is an oxymoron. I mean, it is absolutely inimical to the idea of implied bias to say that. Now, what my colleague is referring to is an argument that was made by the state court. And remember, with respect to everything but that first argument I discussed, we're limited to the reasons articulated by the state court. There is a section in the state court's opinion that talks about Section 1181, which is the new trial statute in California. And there's an argument in there that the wording of that statute compels an inquiry into actual bias. And that is what my colleague is referring to. Now, that is what's called a state ground that has to be adequate and independent before it's going to rescue this conviction under habeas law, right? And what's striking is that the people have not tried to defend it, and it's their burden to do so, as an adequate and independent state ground. So as far as I can tell, it's out of the case. The argument that she's making about what California is free to do or whatever is simply not on the table here. Because when we look, I said there were two types of argument, right? The second bin is the types of argument concerning the nature of McDonough that the state court could have articulated. And we're limited to those because when there is a reasoned state court opinion, we don't look at hypothetical reasons to support the conviction. We look at what they actually said. So what did they actually say? One argument was that McDonough is not a constitutional rule. It's only a federal rule. It applies only in federal court. District court rejected that, and it has not been appealed. So that's waived, right? If you look at the other reasons, they're all really state law grounds, and the So to me, that's conclusive of the case. I want to address one other thing, which is a sort of piece of rhetoric that I find in their brief. They repeatedly refer to the McDonough rule, as Judge Bybee has read it and as we read it, the two-part rule, as an automatic reversal rule. And they castigate us for urging a rule which they say is out of touch with modern learning about how we don't overturn the results of costly trials when there's no prejudice, right? That is a mischaracterization of the two-part test. The two-part test has a violation part, and it has a prejudice part. The violation is that a juror answered dishonestly a material question in voir dire. Then you move to the prejudice part, and what is required is a showing of loss of a valid basis for a challenge for cause. So it's simply not true to characterize this two-part test as something that's out of step with harmless error doctrine and all of that. It does contain a prejudice requirement. Well, as I understand the State's argument, let's take it outside the statute for a minute. A juror during voir dire, the question is asked, do you know any of the lawyers involved in this case? You don't raise your hand. And after trial, you find out that, in fact, one of the jurors, and for some reason these always seem to turn out to be the foreperson in these cases, is you find out, goes to church with the prosecutor and sees him or her every Sunday at church, and they're maybe not super close personal friends, but they see each other very regularly, socialize at church events and so on. And you might argue, well, that would have been a grounds for a cause challenge, and you can show the two prongs of McDonough. But does the State then have a right to come in and say, but that juror wasn't really biased. He wasn't actually biased against the defendant. That wasn't an association that made all that much difference to him. Can you make that change? Can you make that analysis? So as it lays out, I believe, in the Blackman concurrence, the process there is first you look at, is there an implied bias challenge to be made? And in California, as it happens, there is an exhaustive list of grounds for implied bias challenges, and no others are permitted. The legislature did that. So if it's not on the list, then you move to, well, can we show through examining this juror that there was some actual bias, subjectively speaking? I think that's the way it would work. Does that answer your question, Your Honor? I think so. But I guess in the broader sense, if it wasn't statutory, we're not dealing with just statutory implied bias. In a lot of these cases, it's bias that's non-statutory, that's somewhat in the eye of the beholder, the trial judge, whether it's a valid challenge for cause or not. Well, I do think that if you're in implied bias land, you know, it's like if you're pullover driving 80 miles per hour in a 65 zone, you're not going to be heard to say, well, I'm a former NASCAR driver and it was sunny out and the road conditions were great, so I wasn't being reckless. You're conclusively presumed to have been reckless, and that's that. And it's the same with implied bias. I don't think if you're proceeding on an implied bias analysis, all these subjective inquiries really just are not relevant. But isn't it in that California law that if you have an implied bias, it can be rebutted? No, that has never been the law until the unpublished decision that was rendered in this case. And that is why they don't defend that as an adequate and independent state ground, because it is utterly novel, it is utterly bizarre, and no court, as far as I know, has ever held that before. But even if we thought it was bizarre, we can't tell the California court that they're wrong about their interpretation of California law, can we? Actually, the whole doctrine of adequate and independent state grounds gives you a handle for checking out whether a ruling was really state law or was it some kind of opportunistic one-off creation, okay? You look at whether the rule is consistently applied, and if it's utterly novel, you know right away it wasn't consistently applied. That is you've got a Federal handle for doing exactly that kind of inquiry. Looks like my time is up. Yes. Thank you very much, Mr. Hirsch. Ms. Swanson, you have some time reserved. Just quickly, independent and adequate grounds have to do with procedural default. Procedural default is not at issue in this case. As for petitioners... What is your best case for that? There's no procedural default here? No, that's only a procedural default situation.  I understand that's the standard, but he's suggesting that is exactly what applies here, and I'm trying to say what precedent do I look at? I don't know, but we haven't invoked the affirmative defense of procedural default, so it's not at issue. Okay, and then quickly, I just wanted to respond to petitioners' assertion that the court in this case made up state law. It did not. It relied on a previous case, People v. Green, that held that in a similar context where a felon juror made it onto the jury that after that juror actually served on the jury, state law created a rebuttable presumption of bias. The prosecution could rebut with an actual bias. And, I mean, which the... I'm sorry, which the prosecution could rebut. And also, there are numerous... This is not just a... This is just not a state law thing. There are numerous federal courts, also in the felon juror context, which has said that the implied bias can be... That the implied bias is not enough to state a McDonough claim. You have to show that the juror was motivated by bias to get on that jury. That's just simply not true, that there's no basis for this, and it makes absolute sense for the reasons I stated earlier about there being a prospective versus a retrospective inquiry. And I see that my time is almost up, so unless there's any further questions, I'm prepared to submit. Thank you, Ms. Swanson. We thank both counsel for the argument. Scott v. Arnold is submitted.
judges: Melloy, Bybee, N.R. Smith